Good morning. Good morning. May it please the Court, my name is David Schlesinger, I represent the appellant Kendrick Green. With the Court's indulgence, I'd like to proceed in the order in which I've briefed the issues, in which the issues appear in the opening brief, beginning first with the question of then proceeding to the jury instruction cluster of issues, and then, time permitting, moving on to the mail fraud count and the sentencing issue. Is he out of prison now? He actually has been released earlier, Your Honor, because of his participation in certain programs. Is the sentencing issue moot now? It's not truly moot, Your Honor, to the extent that if Mr. Green were to have counts of conviction reversed, and there were to be a remand for resentencing, it certainly would give the District Court guidance as to what the new sentence would be. I think the most likely result would be if the government were to retry Mr. Green, and if he were to be convicted, that he would simply be sentenced to time served. But it certainly, it is at least a minimally active live issue, Your Honor. Now, beginning with the April 14, 2011, situation, proceeding that two days earlier, on April 12, 2011, as Special Agent Darlene Toussaint of the IRS's Criminal Investigation Division admitted on cross-examination at a suppression hearing before the District Court, Ms. Toussaint, Special Agent Toussaint, informed Mr. Green that he was under compulsion of subpoena and therefore needed to appear at the U.S. Attorney's Office in San Diego on April 14, 2011. Counsel, can I short-circuit this in one respect? Certainly, Your Honor. The District Court made a number of findings of fact that start on page 24. Are there specific findings of fact that you contend are clearly erroneous, and if so, which ones are they? We do contend that there are certain findings, Your Honor, that are clearly erroneous, and certainly to the extent that the District Court found that- Which ones specifically? To the extent that the District Court determined that there had not been any sort of a ruse or deception or any sort of coercion that resulted in- What was the coercion? The only word that she says is she says there were no threats and no coercion. So what was the coercion in your view? The coercion, we argue, Your Honor, is Ms. Toussaint's admitted statement that she told Mr. Green that he was under compulsion of subpoena. And was there a subpoena issue? There was a subpoena issue, Your Honor. That's true, isn't it? It is technically true, Your Honor, but Mr. Green, as of April 22nd, April 12th, 2011, was almost certainly considered a target because he received at his appearance a target letter. So there were very- Okay, what else besides telling him that he has to obey the subpoena, what else have you got? What else we have, Your Honor, at least underlying the coercion, at least relating to it, is the circumstances under which this interview occurred. Ms. Toussaint, Special Agent Toussaint and her partner in this investigation, Special Agent Leticia Murillo, acknowledged in their testimony that there had not been a definitive decision made as to whether to bring Mr. Green before the grand jury. So the clear intent, and this is true based on the circumstances, including the pre-positioning of a laptop computer or printer, preparation of an outline exclusively for the interview itself, the clear intent of the agents and Assistant U.S. Attorney Christopher Alexander that day was to interview Mr. Green and to get a written affidavit from him. Well, in fact, isn't it common practice for prosecutors to, you know, they have a potential witness, even just to call a witness to the attorney up and say, listen, we'd like to get a statement from X, you can come in for an interview or we can subpoena him. That's very common, isn't it? I mean, you're saying that, what you're saying is that kind of practice is coercive. Why is that? Why do you give the person the chance to, you know, give an interview as opposed to appearing before the grand jury? Why is that coercive? Well, not under the circumstances that you're positing, Your Honor. Here, there had already been two statements given by Mr. Green. I know that, you know, but that's just like, you know, settling a case after a complaint's been filed. I mean, so what? I mean, there's Toussaint, well, he says, I'm here, I'm going to subpoena you to appear before the grand jury, and the prosecutor says, well, you can talk to us instead of going in. Right? Why is that coercive? Here, the circumstances under which the government wanted to speak to Mr. Green were not disclosed by Special Agent Toussaint. You know, she merely referred to the subpoena and said he was under compulsion, which Mr. Green's father, Rudolph Green, testified at the suppression hearing. They infer that to mean that he would be arrested if he did not appear. I never said that, and again, I ask you, is there any other finding of fact that you contend is clearly erroneous, besides the statement that, according to the district court, there was no coercion or threat? Are there any other of the findings of fact that, in your view, are clearly erroneous? As I think I may have alluded to earlier, Your Honor, we believe that to the extent the district court determined that there was any deception or ruse that existed, and the district court based that finding merely on the fact that Mr. Alexander had booked time for Mr. Green to appear before the grand jury. We would submit that that finding is clearly erroneous. But all the rest of them you're accepting. No firearms were displayed. He was told he was not under arrest. He declined to answer some questions, and they were not pressed. He was not told he had to answer them. And the other sort of factual issues you're conceding, it sounds like. We're not contesting, Your Honor, that from the moment Mr. Green appeared in the conference room and was presented with the target letter and had the target letter read to him, we're not arguing that anything from that point forward rendered the statement involuntary. Okay. What we are arguing is that everything preceding the reading of the target letter the statement that he was under compulsion to appear combined with the circumstances strongly suggesting that the government intended only to interview Mr. Green and not to actually bring him before the grand jury. What would your position be if the contrary had happened? If he'd been called in for an interview and was not told that there was a subpoena, even though there was one, would you be arguing that that was deceptive? I mean, it seems like you're kind of playing it both ways, that if they tell him there's a subpoena, that's coercive, but if they don't tell him there's a subpoena, that's deceptive. So what are they supposed to do other than not interview him, which sounds like maybe it's your goal? I think, Your Honor, the hypothetically positive would be quite suspect if they were to call him in. Well, that's my point. So is it your position that this type of interview just can't happen? Because they have a choice. They can either tell him there's a subpoena, which you say is no good, or they don't tell him, which you also say is potentially problematic. So what are they supposed to do? I think they should have been much more forthcoming about the circumstances, Your Honor. I think what they should have done was told him that he was under subpoena and that they intended to meet with him first because they consider him to be an investigatory target who could render valuable information to the investigation. They didn't do that here. Is there any authority for that requirement? We acknowledge that there isn't any authority that a target has to be presented with the letter in the abstract in advance, but I think under the totality of circumstances, especially given that Mr. Green had already given two statements, given that he had been served with the subpoena, that should have occurred here, Your Honor. I mean, this is a very unique set of circumstances, and I don't think it's likely to recur frequently, but I think that under the totality of the circumstances, there was sufficient coercion to trigger a constitutional violation. What else did you want to talk about? I would like to talk about the cluster of jury instructions underlying, or I should say, relating to the district court's permitting the government to proceed on a co-schemer liability theory. The first issue we have with that instruction is that it was redundant, unnecessary overkill under the circumstances that only served to confuse the jury that had already been charged with primary theories of liability regarding mail fraud and wire fraud. Obviously, Mr. Green was charged with conspiracy in count one, and so Pinkerton attached to that, and we did not argue that the Pinkerton instruction was incorrect. And, of course, there was an aiding and abetting instruction. So when you have these four theories all competing with one another, and you have a jury consisting of unlearned-in-the-law individuals, individuals without legal training, it's simply too unduly confusing. Well, what should the judge do if this guy's charged with both conspiracy and with aiding and abetting mail fraud? What is the judge supposed to tell the jury? I think the judge should have decided, as defense counsel argued, not to charge regarding co-schemer, particularly given that Mr. Green... Isn't that a valid theory? In theory, it was valid, Your Honor, but under the circumstances, it was completely unnecessary because Mr. Green was only charged in counts four and ten, counts in which the government, according to its proof, Mr. Green personally participated. So the government wasn't arguing that Mr. Green was vicariously liable for conduct in which he did not personally participate. So under the circumstances, when you have this, for lack of a better term, a complete mishmash of very confusing theories that even attorneys themselves would have to parse very carefully, that the jury was simply too confused by all this. As I was reading this, it occurred to me, and I don't know if this is right or wrong, but it concerned me that this co-schemer theory and the conspiracy theory were basically the same thing. It was like a multiplicitous indictment. But I don't understand that that objection was ever made. The objection was made, Your Honor, that it was simply too confusing, given that, as Judge Graber's opinion for the court in Stapleton pointed out, that to be charged for the government to proceed under a co-schemer theory didn't even need to prove that the defendant was a member of a conspiracy. And Instruction 18 doesn't require a finding that there is a conspiracy, does it? That any of the particular defendants was a member of a conspiracy. Isn't that the difference between 15 and 18? It's one of the differences, Your Honor. But as we mentioned in our second issue relating to this instruction, when you look at Paragraph 2 of Instruction 18, there wasn't any type of reasonable doubt requirement specified in that element, if you will, of the co-schemer liability theory. And so, especially when you combine that with the overall- How did that alleged error affect the verdict? He's found guilty on 4 and 10, which are the specific things that he's alleged to do personally, right? The mail fraud and the wire fraud. And then he's convicted of conspiracy, which is not the same as co-schemer. So where's the harm? Well, certainly there would be harm in Counts 4 and 10, Your Honor, if the jury had- and we have no idea because the verdict form wasn't sufficiently specific- but if the jury had proceeded based on a defective co-schemer instruction, then Counts 4 and 10 should be reversed. We also argue in the first argument regarding this theory- and I would like to reserve some time for rebuttal. You're down to less than two minutes, so if you want to stop or keep going. Sure. Just basically if I could sum up this point. If the jury were sufficiently confused- and we'd argue that it's note to the judge regarding Count 1 as a concern and Co-Defendant Gonzalez indicated it did not fully understand these vicarious theories of liability- then that would call into question Mr. Green's conviction on Count 1 as well. Count 13, conspiracy to money launder, is predicated on convictions under Counts 1, 4, or 10. So that would render all four counts of conviction infirm. So if there aren't any further questions, I'd like to reserve the remainder of my time for rebuttal. Thank you, Mr. Schlesinger. Thank you, Your Honor. Good morning. May it please the Court, Peter Coe for the United States. It seems the Court understands our position as far as the voluntariness of the statement, so unless the Court has specific points it wants me to address on that, I'm just going to go to the jury instruction. As far as the jury instruction, to address your question about whether or not it seems that the Co-Schemer is the same as the Pinkerton instruction, they are very similar, but I think Stapleton makes clear they are not the same, because as Judge Graber just indicated, the Pinkerton instruction requires proof of a conspiracy. The Co-Schemer does not. It requires proof of a scheme. It does require proof of a scheme. What's the difference between a scheme and a conspiracy? In many cases, there probably is not a difference between them. In this case, though- Okay, where would it be different? This is one of those cases where it was possibly different, because one of the arguments that was made at the Rule 29 motion was that not only was there insufficient proof of the conspiracy, but that we had charged the wrong conspiracy, and that is the point that Judge Moskowitz made when he was debating whether or not to give the Co-Schemer. That doesn't answer my question. What is the difference between a scheme and a conspiracy? You say most of the time it's going to be the same. When is it not going to be the same? I can't think of a scenario if you have the charged conspiracy where it is not the same. Let me ask you the question this way. What was the scheme in this case? The scheme in this case was to defraud mortgage lenders by submitting false applications. Now, how is that different from a conspiracy? In this case, I would say as we charged it and as we proved it, there was no difference. Why isn't it a multiplicitous indictment? I mean, just for the sake of it. I don't think it would be multiplicitous simply because there are multiple theories of liability that would all point to this defendant's guilt. I don't think that, as I understand it, is the definition of multiplicity. I mean, you charged the same act in two ways, and if you say there's no difference between a scheme and a conspiracy, and he's charged with both a scheme and a conspiracy, I'm not clear why you haven't just doubled up on it. Are you saying that the conspiracy count, then, is the same act as the suspect? That's what I'm asking you. Tell me how they're different. And you said, basically, in this case, there is no difference, if I understood you right. By the theory of liability, you reach the same result, but I don't think that necessarily means the charge is multiplicitous because the charge, you have a substantive act of mail and wire fraud, and you have a conspiracy, which is, by definition, not a completed act. But if the theory of the mail fraud is a co-scheming theory and not some other theory, I don't see how there's any difference between the conspiracy and the co-schemer. My understanding of multiplicity, and we didn't brief this, but my understanding of multiplicity is that you look at the elements, not the actual underlying conduct. So, in this case, you would be looking at the elements of conspiracy versus the elements of mail and wire fraud, which are definitely not the same. Well, this indictment wasn't attacked on that ground, was it? No, it was not. And if it were, I don't know if it would make a difference. Certainly, if something came up after conviction, I mean, you know, there are cases where there are convictions on two counts that are, you know, like we'll say co-scheming and conspiracy, and you just don't sentence on the one, right, or dismiss the one afterwards. If that's true. That's the remedy, yes. If that's true. If they're multiplicitous, yes. All right. The point I was initially going to make about the – there was an argument in this case that there were multiple conspiracies. So it was possible in this case that the jury might find they didn't commit the charged conspiracy, and therefore the Pinkerton liability is out the window. And in that case, you might still have the co-schemer instruction that would apply. Well, was there an instruction on, you know, multiple conspiracies in this case? Yes. Multiple conspiracy instruction was given at the defense's request. But that's not enough to cure the problem that Judge Silverman is addressing. Whether or not the indictment is multiplicitous? Yes. No, I don't think that addresses the issue that potentially you've identified, although I don't think it applies in this case. Hypothetically, suppose we said that these instructions are all fouled up, given what we've just been talking about, and we threw out the mail fraud conviction and let the conspiracy conviction stand. What practical effect would there be? Does it make any practical difference? I don't think so. I mean, well, he loses a $100 penalty assessment. Okay. So he can walk a little taller because he's got his 100 bucks back. But that's about it, right? I mean, that's the only – Yes, sir. As far as the notion that giving the co-schemer instruction somehow confused the jury, there's absolutely no indication this jury was confused. They never asked a single question about the co-schemer instruction. There's no reason to think that this theory of liability is any more confusing than any other theory of liability that applies in any criminal case. So I think that's simply just an absence of any indication of confusion on the part of the jury. And, you know, as far as the question of why give the co-schemer instruction, there's just no way to know what a jury might convict on. If it applies legally, and it does in this case, there was a foundation in evidence, then it should be given. And they've never contested that there was a foundation in evidence for the co-schemer instruction. So unless the Court has any other questions, I'll submit. No further questions. Thank you, Mr. Koh. Let me very quickly respond to some of Mr. Koh's points. In regard to your concern, Judge Silverman, regarding the mail fraud count, the wire fraud count would also have to be reversed on the same grounds. Would he get $200 instead of one? Is that the only effect? If the Court were only to reverse on those two counts. But, you know, we've argued that because these cluster of instructions were so unduly confusing to the jury, that the entire conviction is infirmed. I mean, but you say you don't have a problem with the Pinkerton instruction. We did not have a problem with the Pinkerton instruction. So what basis would we have to set aside the conspiracy count? The argument would be that the jury improperly used the co-schemer liability to find Mr. Green guilty on the conspiracy count as well. So because it didn't properly apprehend these very confusing, you know, combination of primary and vicarious liability theories. So that's our argument regarding the convictions in their entirety. You know, with regard to, if I could quickly address this issue of multiplicity, our issue with the charging of a scheme and a conspiracy in the same case is not related to the indictment. And as Mr. Cope noted, the multiplicity argument was not made at any level. But our concern is that once the district court allowed the co-schemer theory to be charged to the jury, that's where all these problems happen. Yeah, I agree it wasn't raised. My point was it would have been a lot easier to sort this out in the charging phase of this than, you know, once it goes to a jury on several theories. But that's the way the cards were dealt, so that's the way it is. I see you're out of time. If there are no further questions, Your Honor. Yeah, thank you. Mr. Cope, thank you as well. The case just argued is submitted. Thank you, Your Honor.
judges: Tashima, Silverman, Graber